UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

SHAVAR MCFADDEN,

Plaintiff,

v.                                                          COMPLAINT

                                                            JURY TRIAL DEMANDED

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY
POLICE DETECTIVE MICHAEL MCCREADY
(TAX NO. 932995), NEW YORK CITY POLICE
SERGEANT RAMIRO RUIZ (TAX NO. 939384);
NEW YORK CITY POLICE DETECTIVE EDWIN
ESTRADA; NEW YORK CITY POLICE
DETECTIVE MICHAEL MCGOVERN (TAX NO.
938989); NEW YORK CITY POLICE OFFICERS
JOHN AND JANE DOE #1-#5, individually and in
their official capacities, (the names "John Doe" and
"Jane Doe" being fictitious as their complete names
and/or current identities are presently unknown,

Defendants.

-----------------------------------------------------------------X

Plaintiff Shavar McFadden, through his attorney Geoffrey Stewart, as and for his

complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and

Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of

1871, *as amended*, codified as 42 U.S.C. § 1983 and by the laws and Constitution of the State of

New York.

Plaintiff Shavar McFadden's right to document public police activities, to be free from

unreasonable seizures, to be free from excessive physical punishment and to receive due process

under the law were violated when officials of the New York City Police Department ("NYPD")

1

singled him out for a retaliatory arrest without probable cause on July 3, 2015 causing Mr. McFadden to suffer physical pain, to endure unlawful confinement and psychological harm. By reason of Defendants' targeting Mr. McFadden for unconstitutional arrest, and the failure of Defendants-Officers to intervene, Mr. McFadden was deprived of his rights secured by the First, Fourth, Fifth and Fourteenth Amendments.

Mr. McFadden seeks an award of compensatory and punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States. Venue is proper for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. McFadden's claim arose in the County of Queens in the State of New York, within the confines of this judicial district.

2. Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as to any and all of Plaintiff's claims arising under New York state law as such claims share a common nucleus of operative facts with Plaintiff's federal claims herein.

## TRIAL BY JURY

3. Plaintiff demands a trial by jury on each and every one of his claims pleaded herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

4. Plaintiff, Shavar McFadden, an African-American citizen of the United States, is a 32 year old resident of Queens County, State of New York.

5. Defendant The City of New York ("City" herinafter) is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

6. Defendants NYPD DETECTIVE MICHAEL MCCREADY (TAX NO. 932995), NEW YORK CITY POLICE SERGEANT RAMIRO RUIZ (TAX NO. 939384); NEW YORK CITY POLICE DETECTIVE EDWIN ESTRADA; NEW YORK CITY POLICE DETECTIVE MICHAEL MCGOVERN (TAX NO. 938989) and NYPD Officers John and Jane Does #1 through #5 (referred to collectively as the "officer-defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD. The officer-defendants are being sued individually and in their official capacities.

7. At all times relevant herein, the NYPD officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

8. The officer-defendants' acts and omissions hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. McFadden's rights.

9. Defendant CITY OF NEW YORK was responsible for the hiring, training, supervision, discipline, retention and promotion of officers, supervisors, and employees

3

within its agencies, including the NYPD, and/or other agencies which employed the officer-defendants herein.

## STATEMENT OF FACTS

10.   On July 3, 2015 at approximately 9:45 pm Plaintiff, Shavar McFadden was a passenger, seated in the rear seat of a livery vehicle being driven on the public streets of Queens County. In the vicinity of 87-15 Beach Channel Drive, Queens County, Defendant-Officers all NYPD Officers initiated a vehicle stop by activating sirens and turret lights on their unmarked NYPD vehicles.

11.   During the time Mr. McFadden was riding as a passenger in the vehicle, the vehicle was being operated in compliance with all applicable vehicle and traffic regulations. The vehicle was in compliance with all New York State motor vehicle equipment requirements.

12.   Numerous police officers in plain clothes surrounded the vehicle. After inquiring as to why the vehicle was being stopped, Plaintiff asked if he was free to leave as he did not want to be delayed by the police activity. Defendant-Officers refused his request.

13.   Plaintiff then began to video record the activities of the Defendants-Officers as well as his interaction with Defendant-Officers and specifically requested again information as to why the vehicle was being stopped and whether he could leave.

14.   Shortly thereafter, one of the Defendant-Officers opened the rear door to the vehicle, pulled Plaintiff out and begin choking him. Defendant-Officers then pushed him onto the vehicle, spun him around and placed him in handcuffs. Defendant-Officers took his phone and attempted to manipulate it in a way appearing to erase the video clip recorded by Plaintiff. None of the other Defendant-Officers present made any attempt to stop the abuse or to intervene in any way.

15.   Defendant-Officers verbally abused Plaintiff. Defendant-Officers placed handcuffs of Plaintiff and closed them extremely tightly causing Plaintiff pain and ultimately numbness and

marks on his wrists. Plaintiff asked on several occasions to loosen the handcuffs which Defendant-Officers refused to do.

16. Plaintiff was taken into custody despite the fact that he had committed no crime, had not engaged in any conduct which would cause a reasonable officer to believe he had committed or was about to commit a crime. He was physically removed from the vehicle because he was attempting to document the illegal racial profiling of the NYPD Defendant-Officers who had stopped the vehicle and were unjustly detaining and investigating Plaintiff Mr. McFadden under the guise of a vehicle stop.

17. On July 3, 2015 Defendant Police Detective MICHAEL MCCREADY and Defendant Detective MICHAEL MCGOVERN created an official NYPD arrest worksheet and online arrest worksheet in which he claimed in the narrative section that Plaintiff McFadden acted tumultuous and was screaming and yelling and threatened the officers at the time of the car stop. Defendant Police Detective MICHAEL MCREADY and Detective MICHAEL MCGOVERN knew that this allegation was false when they prepared the official police reports.

18. Plaintiff was transported to a police precinct where he was held in a holding cell. Later he was taken to the NYPD's Central Booking detention facility where he was held in a jail cell. He was presented to a Judge of the New York City Criminal Court, Queens County on July 4, 2015 where he was ordered released on recognizance. He spent an estimated 24 hours in custody before his release.

19. The charging document presented in court against Plaintiff was a complaint sworn to by Defendant NYPD Detective MICHAEL MCCREADY of the Narcotics Borough Queens. Defendant Detective MCCREADY swore that the vehicle in which Plaintiff was riding was pulled over due to a failure to signal and a malfunctioning rear brake light. Detective MCCREADY further swore that as he was asking the driver for his license, registration and insurance that Plaintiff began to move

5

around in the back seat and began yelling and screaming causing a crowd to gather. Detective MCCREADY swore on the complaint that the Plaintiff refused to obey several orders that he NOT exit the vehicle and that Plaintiff's action prevented him from conducting the traffic stop. These statements were filed with the Criminal Court on July 4, 2015 under Docket No. 2015QN033069. Plaintiff was charged with Obstructing Governmental Administration in the Second Degree in violation of New York Penal Law 195.05 and Disorderly Conduct in violation of New York Penal Law 240.20(2)(making an unreasonable noise). The statements sworn to by Detective MCCREADY were false and were filed intentionally to cause the Plaintiff to face consequences including deprivation of his liberty by way of influencing the prosecutou and Judge through the false statements.

20.    The criminal case against Plaintiff was adjourned to August 13, 2015 and Plaintiff McFadden was directed to return to court on that date. The District Attorney was directed to investigate and file a superceding complaint as the initial complaint had some errors, typos or omissions.

21.    After his release from custody Plaintiff was still experiencing pain in his wrists and numbness in his fingers as well as soreness in his neck and difficulty swallowing and speaking due to the physical attack of Defendant-Officers on Plaintiff of the night of July 3, 2015. Plaintiff sought and received medical treatment at St. John's Episcopal Hospital in Far Rockaway, Queens.

22.    Plaintiff returned to court on August 13, 2015 and appeared before the Court. The District Attorney offered an Adjournment in Contemplation of Dismissal pursuant to New York Criminal Procedure Law Section 170.55. Plaintiff rejected the offer and the matter was adjourned again for the District Attorney to refile the charges in a superceding complaint. The matter was adjourned to October 5, 2015.

23.   Plaintiff was required to appear in Criminal Court on 3 or 4 occasions as he defended himself against the false allegations made by Defendant Detective Michael McCready On April 6, 2016 the Office of the District Attorney moved to dismiss the two charges of Obstructing Governmental Administration and Disorderly Conduct contained in Docket No. 2015QN 033069. In so moving, the prosecution noted that they could not prove the charges beyond a reasonable doubt.

24. Plaintiff filed a complaint with the New York City Civilian Complaint Review Board which substantiated 2 charges against Defendant NYPD Sergeant Ramiro Ruiz for improperly stopping Plaintiff Shavar McFadden and arresting Shavar McFadden. Defendant Officer Detective Edwin Estrada was cited for an Abuse of Authority for refusing to provide his name to Plaintiff Shavar McFadden.

25.   The aforesaid event is not an isolated incident. Defendant CITY OF NEW YORK is aware from lawsuits, in general and against these same Defendant-Officers, notices of claims and complaints filed with the NYPD's Internal Affairs Division and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers are insufficiently trained on the proper way to use force and investigate innocent individuals who are present in public places.

26. Defendant CITY OF NEW YORK is further aware that such improper training has ofter resulted in a deprivation of constitutional rights. Despite such notice defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the officers in the present case to violate the plaintiff's civil rights.

27.   Moreover, upon information and belief, defendant CITY OF NEW YORK was aware prior to this incident, that the individual Defendant-Officers lacked the objectivity, temperment, maturity, discretion, and disposition to be employed as police officers and failed to adequately train and supervise them.

28.  As a result of the forgoing, Plaintiff Shavar McFadden sustained physical injuries, emotional distress, embarrassment, humiliation, deprivation of his freedom and wholesale violation of his constitutional rights.

**FIRST CLAIM**

**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
**(Against the individual defendants)**

29.  Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein. By the individual defendants' conduct and actions in seizing Plaintiff, in retaliation for protected activity, namely, filming police conduct occurring in a public space, by detaining him without reasonable suspicion or probable cause to believe that he had committed any crime or violation of law, by inflicting pain by choking, pushing and handcuffing, and for continuing that detention far longer than necessary to accomplish any legitimate law enforcement objectives (of which there were none), by abusing the criminal process, and by failing to intercede to prevent the complained of conduct, defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

30.  As a result of the foregoing, plaintiff was deprived of liberty, suffered pain and emotional distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## FALSE ARREST UNDER 42 U.S.C. § 1983

31.  Plaintiff Mr. McFadden repeats and realleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

32.  By the actions described above, defendant-officers caused to be falsely arrested or actually falsely arrested Mr. McFadden, without the requisite reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so, and caused him to be detained for at least 24 hours. Mr. McFadden was aware of the imprisonment to which he was subjected. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. McFadden and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

33.  The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to Mr. McFadden pursuant to the state common law doctrine of *respondeat superior*.

34.  The defendants' deprivations of Mr. McFadden's rights resulted in the injuries and damages set forth above.

## THIRD CLAIM

## VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH UNDER THE FIRST AMENDMENT

35.  Plaintiff Shavar McFadden repeats, reiterates, re-alleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

36.  Plaintiff had a consitutionally protected right, under the First Amendment, to document the activities occurring around him immediately prior to his arrest.

37.  Plaintiff did not interfere in any way in the Defendant Officers execution of their duties during this incident.

38.  Plaintiff's arrest, detention and prosecution for the charge of disorderly conduct were intended as retaliation for documenting the unlawful stop of the motor vehicle in which he was riding and the unjustified detention to which he was subjected and this resulted in his arrest and did chill plaintiff's right to freedom of expression under the U.S. Constitution's First Amendment.

## FOURTH CLAIM

## EXCESSIVE FORCE UNDER 42 USC 1983

39.  Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs numbered 1 through 38 with the same force and effect as if fully set forth herein.

40.  The level of force employed by Defendant-Officers was excessive, objectively unreasonable and otherwise in violation of Plaintiff's constitutional rights.

41.  As a result of the excessive use of force including but not limited to the use of a chokehold and extremely tight handcuffing, Plaintiff was subject to a level of force and violence which caused him to sustain physical and emotional injuries.

42.  As a result of the foregoing Plaintiff Shavar McFadden is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements.

**43.**

**FIFTH CLAIM**

 **MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

43. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "42" with the same force and effect as if fully set forth herein.

44. Defendant-Officers misrepresented and falsified evidence before the District Attorney.

45. Defendant-Officers did not make a complete and full statement of facts to the District Attorney.

46. Defendant-Officers withheld exculpatory evidence from the District Attorney.

47. Defendant-Officers were directly and actively involved in the initiation of criminal proceedings against plaintiff Shavar McFadden.

48. Defendant-Officers lacked probable cause to initiate criminal proceedings against plaintiff Shavar McFadden.

49. Defendant-Officers acted with malice in initiating criminal proceedings against plaintiff Shavar McFadden.

50. Defendant-Officers were directly and actively involved in the continuation of criminal proceedings against plaintiff.

51. Defendant-Officers lacked probable cause to continue criminal proceedings against plaintiff.

52. Defendant-Officers acted with malice in continuing criminal proceedings against plaintiff.

53. Defendant-Officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

54. Notwithstanding the perjurious and fraudulent conduct of defendant-officers, the criminal proceedings in regard to the one charge of disorderly conduct was terminated in plaintiff's favor on or about October 2, 2015, when upon motion of the District Attorney of Queens County the charge was dismissed.

55. As a result of the foregoing Plaintiff Shavar McFadden is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements.

## SIXTH CLAIM

## FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983

56. Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth at length herein, and further alleges;

57. Defendants failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Plaintiff was subjected despite the fact that they had opportunities to do so.

58. The individual defendants, and each of them, thereby displayed deliberate indifference to Plaintiff's rights, including but not limited to Plaintiff's right to be free from unreasonable and unlawful searches and seizures, right to procedural and substantive due process, and right to not be prosecuted based upon fabricated evidence.

59. That by virtue of the aforementioned acts by defendants, Plaintiff was deprived of his civil rights guaranteed under the Constitution of the United States, including his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and defendants therefore are liable to Plaintiff for damages under 42 USC § 1983.

60.     That as a result of the foregoing, plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of enjoyment of life, pain and suffering, psychological and emotional injury, and great humiliation and other damages.

61.     That defendants are sued in their individual capacities.


## SEVENTH CLAIM

### *MONELL* CLAIM AGAINST DEFENDANT CITY THROUGH 42 U.S.C. § 1983
**(Against the City of New York)**

62.  Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63.  The individual defendants' acts and omissions described above were carried out pursuant to the City's overlapping customs and practices which were in existence on July 3, 2015 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

64.  The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD. The aforementioned custom and practice of the City and the NYPD include, but are not limited to making retaliatory arrests against persons who lawfully photograph, document, or record police activity.

65.  The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented below:

**Journalists and Photographers**

- **May 30, 2007 / Robert Carneval / <u>Carneval v. City of New York</u>, 08 CV 9993 (DAB) (AJP) (S.D.N.Y.)**
  A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/citysettleswith pairarrestedafterpolice-confrontation/.

- **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
  In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officialsjournalistsamongthosearrested during-zuccottiparkraid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011) http://mediadecoder.blogs.nytimes.com/2011/11/21/newsorganizations complainabout-treatmentduringprotests/.

- **November 15, 2011 / Timothy Fitzgerald / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
  On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

- **November 15, 2011 / Douglas J. Higginbotham / <u>Higginbothan v. Sylvester, et al</u>, 105 F. Supp.3d 369 (S.D.N.Y.)**   During the eviction of Zucotti Park, an international journalist was atop a phone booth photographing an event of public importance, when he was asked to get down by police. As he complied with their request they suddenly pulled him causing him to fall to injury, and thereupon arrested him without cause. **http://www.deadlineclub.org/archives/665**

- **August 4, 2012 / Robert Stolarik**
  Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 pm., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner,

*Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officerisindicted onchargesoflyingabout- photographersarrest.html.

- **September 17, 2012 / Christopher Faraone / <u>Faraone v. City of New York et al</u>, 13 CV 09074 (TPG) (S.D.N.Y.)**
  Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

- **September 1517, 2012 / Julia Reinhart, Charles Meacham, and John Knefel** Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

- **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
  On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

- **March 2012 / Unknown**
  In March of 2012, a cameraman from WABCTV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012) http://photographyisnotacrime.com/2012/03/22/nypdcopassaultsnews videographeratcrime-scene/

- **November 27, 2012 / Angel Zayas / <u>Zayas v. Kelly</u>, 13 CV 08808 (JMF) (S.D.N.Y.)**
  On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justicestory/photog- shootingfriskingsuesnyc harassmentarticle1.1546548

- **January 16, 2013 / Shimon Gifter**
  A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24,

2013) http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutalityin-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklynny-charediphotographerclaims-handcuffedbynypdaftervideotapingflatbushpolice stop/.

- **April 19, 2013 / Justin Thomas / <u>Thomas v. City of New York</u>, 13 CV 6139 (SJ) (LB) (E.D.N.Y.)**
  A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera. Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

### Concerned Citizens

- **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / <u>Bandele v. The City of New York</u>, 07 CV 3339 (MGC) (S.D.N.Y.)**
  Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in BedfordStuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A96 19C8B63.

- **September 29, 2009 / Dennis Flores / <u>Mesa v. City of New York</u>, 09 CV 10464 (JPO) (S.D.N.Y.)**
  On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

  **October 17, 2010 / Anibal Ortiz / <u>Ortiz v. City of New York</u>, 11 CV 7919 (JMF) (S.D.N.Y.)**
  On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

- **July 11, 2011 / Caroline Stern and George Hess / <u>Stern v. City of New York</u>, 12 CV 04863 (SAS) (S.D.N.Y)**
  On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012) http://nypost.com/2012/07/08/couplehandcuffedjailedfor - dancingonsubway platformlawsuit/

- **April 27, 2012 / John Runnells / <u>Runnells v. City of New York</u>, 13 CV 2904 (KBF) (S.D.N.Y.)**

On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again, his camera was seized and the footage deleted.

- **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**
  On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stopandfrisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (October 17, 2013) http://www.nydailynews.com/newyork/brooklyn/brooklyn precinctlogbookmysteryarticle1.1487721

- **August 2012 / Unknown**
  In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (August 17, 2012) http://photographyisnotacrime.com/2012/08/17/nypdcop failsat-intimidatingman fromvideo recordingpoliceheadquarters/

- **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
  On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

- **March 2012 / Unknown**
  In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray. Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012) http://photographyisnotacrime.com/2012/03/18/nypdtakesbreakfrom- beatingman tothreatenvideographerwithpepperspray/.

- **September 28, 2012 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP) (JLC) (S.D.N.Y)**
  On September 28, 2012, at approximately 8:55 pm., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage.

- **March 13, 2013 / Ed Garcia Conde**
  Ed Garcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man. Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

- **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
  Two Harlem residents were arrested after they filmed NYPD officers conduct stop and
  frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning
  from a Bronx mall at about 10:30 pm. when they noticed several vehicles stopped and
  Gonzalez took out her camera to begin filming.
  Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*,
  DNA Info (May 21, 2013), http://www.dnainfo.com/new
  york/20130521/centralharlem/professional- agitatorsonnypdwantedflierarrested afterfilmingstop.

- **June 5, 2013 / Rahul Saksena / <u>Saksena v. The City of New York</u>, 14 CV 5129
  (JBW) (LB) (E.D.N.Y.)**
  On June 5, 2014, at approximately 10:00 pm., Mr. Saksena was arrested in retaliation for
  filming a civilian police interaction in the Bushwick section of Brooklyn.

- **August 26, 2013 / Jonathan Harris**
  NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers
  attack and threaten two young girls in a Bronx park. The teenager told the officers to leave
  the girls alone and began filming them with his phone. The officers began chasing him,
  tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they
  were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013),
  http://www.nydailynews.com/newyork/bronx/teensmauled copsarticle-
  1.1440394#ixzz2eVh68jgw.

**September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV
1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to record
police during a rally in front of Midtown North Precinct police station on West 54th Street.
Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times
(October 2, 2013),
http://www.nytimes.com/2013/10/03/nyregion/streetvendorsprotesttreatmentby
police.html?_r=0.

**September 21, 2013 / Michael Guzman / *Guzman v. The City of New York*, 15 CV 2662
(KAM)(VMS)(E.D.N.Y.)**
 On September 21, 2013, at approximately 5:50 pm., Mr. Guzman was in the Borough Hall
subway station and observed members of the NYPD detain a number of individuals. He
began to records the interactions the officers were having with the detainees. In response to
his recording the officers' conduct, he was arrested.

**September 25, 2013 / Debra Goodman / <u>Goodman v. The City of New York</u>, 14 CV
5261 (CM) (S.D.N.Y)**
Debra Goodman was arrested by two NYPD officer for using her cellphone to
videotape an interaction between the officers and a homeless woman.

**October 11, 2013 / Bina Ahmad**

On October 11, 2013, a public defender, Bina Ahmad, was arrested for photographing the arrest of two men at the Kingston Throop Ave. subway station in Brooklyn. The charge against her was dismissed at arraignment.

**February 22, 2014 / Jeronimo Maradiaga, Cosme Del RosarioBell, Kevin Park and Randolph Carr**
On February 22, 2014, four young men, Jeronimo Maradiaga, Cosme Del Rosario Bell, Kevin Park and Randolph Carr, who are part of Harlem Copwatch were arrested for videotaping a vehicular checkpoint set up on the 145th Street Bridge between Manhattan and the Bronx.

66. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 29.

67. Defendant City of New York knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

68. Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policymaking officers and officials of the NYPD and the City, including former Commissioners Raymond Kelly and William Bratton, did not take steps to terminate these policies, practices and/or customs, did not discipline individuals who engaged in such polices, practices and/or customs, or otherwise properly trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

69. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

70. Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful *de facto* policies and/or well settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

## EIGHTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING UNDER THE LAWS OF THE STATE OF NEW YORK
### *(Against defendant City)*

71. Mr. McFadden incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein. Defendant City negligently hired, screened, retained, supervised, and trained the officer defendants. The acts and conduct of the officer-defendants were the direct and proximate cause of injury and damage to Mr. McFadden and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72.     The defendants' deprivations of Mr. McFadden's rights resulted in the injuries and damages set forth above.

    **WHEREFORE**, Plaintiff Shavar McFadden demands judgment against the defendants individually and jointly and prays for relief as follows:

    a.  That he be compensated for violation of his constitutional rights, pain, suffering, and economic loss; and

    b.  That he be awarded punitive damages against the officer-defendants; and

    c.  That he be compensated for attorneys' fees and the costs and disbursements of this action; and

    For such other further and different relief as to the Court may seem just and proper.

Dated:          New York, New York
                June 30,  2018

                                            Respectfully submitted,


                                            /S/_____

                                            Geoffrey St. Andrew Stewart
                                            *Attorney for the Plaintiff*
                                            139 Fulton Street, Suite 508
                                            New York, New York 10038
                                            (212) 625-9696
                                            gstewart.defender@gmail.com